# EXHIBIT 2

10/7/2024 4:38 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92888654
By: Kelly Puente
Filed: 10/7/2024 4:38 PM

**CAUSE NO. 2022-41407**

| | | |
|---|---|---|
| **CHANGYI "JOHNNY" CHEN, M.D., PH.D.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **BAYLOR COLLEGE OF MEDICINE,** | § | |
| | § | |
| **Defendant.** | § | **269TH JUDICIAL DISTRICT** |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Baylor College of Medicine ("BCM" or "Defendant") files this Motion for Summary Judgment under Texas Rule of Civil Procedure 166a(b) ("Motion"). In support thereof, BCM shows as follows:

## I. INTRODUCTION

Plaintiff Changyi "Johnny" Chen, M.D., Ph.D. ("Plaintiff" or "Dr. Chen"), a current faculty member in BCM's Department of Surgery, alleges BCM unlawfully discriminated and retaliated against him in violation of Texas Labor Code §21.051. *See generally* Plaintiff's Original Petition. Specifically, Dr. Chen claims BCM discriminated against him because of his race (Asian) and his national origin (Chinese), and that BCM unlawfully retaliated against him because he complained about alleged discrimination. BCM denies retaliating or discriminating against Dr. Chen in any way.

Defendant is entitled to summary judgment on all of Plaintiff's claims for multiple reasons. First, Plaintiff failed to timely exhaust his administrative remedies under the Texas Labor Code because he did not file his claim with the Texas Workforce Commission within 180 days of the date that any alleged acts of discrimination or retaliation occurred. Plaintiff did not file a Charge with the EEOC or TWC until more than 360 days after the last employment action about which he

complains in this lawsuit. Second, even if Plaintiff could overcome this fatal statute of limitations deficiency, his discrimination and retaliation claims both fail because Defendant had legitimate reasons for the allegedly adverse actions at issue, and Plaintiff can neither come forward with nor identify any evidence that BCM's rationale was pretextual or false. As such, BCM is entitled to summary judgment on all of Dr. Chen's claims against it.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and affidavits show that there is no genuine issue as to any material fact as to one or more essential elements of the plaintiff's cause of action. Tex. R. Civ. P. 166a; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827. 828 (Tex.1970). A movant who conclusively negates at least one essential element of a cause of action is entitled to judgment. Tex. R. Civ. P. 166a

The Court takes as true all evidence favorable to the nonmovant and indulges every reasonable inference in the nonmovant's favor. *Patidar v. Bank of Am., N.A.*, 442 S.W.3d 789, 793 (Tex.App.—Houston [14th Dist.] 2014, no pet.). However, the nonmovant must show more than "some metaphysical doubt as to material facts." *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995). "Materiality is a criterion for categorizing factual disputes in relation to the legal elements of the claim." *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. Denied) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 574, 586 (1986)).

Here, the undisputed facts do not support a claim for relief under the Texas Labor Code because the evidence conclusively negates that Dr. Chen timely exhausted his administrative remedies under the Code and because the evidence shows BCM's legitimate, non-discriminatory

and non-retaliatory basis for any employment actions it took with respect to Dr. Chen. Accordingly, BCM is entitled to summary judgment in its favor.

## III. SUMMARY JUDGMENT EVIDENCE

Exhibit A: Excerpts from Deposition of Changyi "Johnny" Chen, M.D., Ph.D.;

Exhibit B: Excerpts from Deposition of Todd Rosengart, M.D.;

Exhibit C: Offer Letter, dated May 4, 2007;

Exhibit D: Funding Expectations for Dept. of Surgery Non-clinical Research Faculty (2015);

Exhibit E: Funding Expectations for Dept. of Surgery Non-clinical Research Faculty (2017);

Exhibit F: Letter to Plaintiff regarding funding expectations, dated June 30, 2016;

Exhibit G: Letter to Plaintiff recapping May 4, 2017 meeting, dated June 17, 2017;

Exhibit H: Plaintiff's 2017 Faculty Performance Assessment and Development Planning;

Exhibit I: Letter to Plaintiff regarding funding expectations and offering new position without endowed chair, dated July 12, 2018;

Exhibit J: Email to Plaintiff regarding maintaining Plaintiff's endowed chair position, dated August 15, 2018;

Exhibit K: Letter to Plaintiff regarding funding expectations dated August 9, 2018, superseding July 12, 2018 letter, and signed by Plaintiff on August 30, 2018;

Exhibit L: Letter to Plaintiff rescinding endowed chair, dated October 14, 2020;

Exhibit M: Letter from Plaintiff's counsel alleging discrimination, dated October 29, 2020;

Exhibit N: Plaintiff's Charge of Discrimination filed October 12, 2021; and

Exhibit O: Affidavit of Nicole Miller, Administrator, BCM Department of Surgery

## IV. FACTUAL BACKGROUND

### A. Dr. Chen's Employment with BCM

Dr. Chen is currently employed as a non-clinical faculty-member in BCM's Department of Surgery ("Department"). Plaintiff was initially hired by BCM in 2002, and he became tenured in

2005.[1] In 2007, BCM offered Plaintiff a Molecular Surgery Endowed Chair, which he accepted.[2] After Dr. Todd Rosengart became Chair of BCM's Department of Surgery, Dr. Rosengart created the Division of Surgical Research ("DSR") in 2013 and appointed Dr. Chen to the position of Chief of the DSR.[3]

As a tenured member of BCM's non-clinical research faculty, Dr. Chen was subject to all Departmental policies, which, beginning in 2013, included the Funding Expectations for Department of Surgery Non-clinical Research Faculty (the "Policy").[4] The Policy required Dr. Chen to fund a certain percentage of his salary through grants or outside funding resources.[5] Initially for Fiscal Years 2015 and 2016, the Policy required outside funding for at least 25% of salary. Starting Fiscal Year 2017, the outside funding requirement increased to 50% of salary. The Policy applied equally to tenured and nontenured faculty alike, and the potential consequences for not meeting the funding requirement included salary reduction (up to 50%), probation, and termination of employment.[6] These requirements were communicated to Dr. Chen, and Dr. Chen acknowledged his receipt of the Policy, both when the Policy became effective and as it was periodically updated thereafter.[7]

### B. Plaintiff's Failure to Comply with the Policy Results in Reductions in Salary Between 2016 and 2018, and Changes in Title and Reduced Lab Space in October 2020

Year after year, since 2014, Plaintiff failed to meet the minimum outside funding requirements established in the Policy. BCM counseled Plaintiff and gave him multiple warnings

[1] Ex. A at 30:9-18.
[2] Ex. C.
[3] *See generally* Ex. D.
[4] *Id.*
[5] Ex. D at 1 (Non-clinical research faculty with at least three years of experience in the Department, regardless of whether they are tenured or not, "are expected to acquire funding from grants or outside funding sources to cover at least 50% of their salary."); *see also* Ex.E.
[6] *Id.* at 2.
[7] Ex. A at 89:18-23; *id.* at 90:16-91:25.

about meeting this requirement, including verbal coaching, numerous face-to-face meetings, multiple letters and other written correspondence, and formal performance reviews.[8] However, as detailed below, he repeatedly failed to meet the annual funding obligations set out in the Policy.

On June 30, 2016, Plaintiff's supervisor and Department Chair, Dr. Todd Rosengart, provided a letter to Plaintiff explaining that, because Plaintiff had not secured the required extramural/outside funding, the decision was made to reduce his salary from $260,000 to $237,000 annually.[9] In the same letter Dr. Rosengart encouraged Plaintiff to "continue seeking grant or other outside sources of funding so that your future salary support is not impacted." Dr. Rosengart also reminded Dr. Chen that for Fiscal Year 2017 he was required to account for fifty percent of his salary through external funding. Notably, although the Policy allowed up to a 50% reduction in salary when sufficient outside funding was not obtained, Dr. Rosengart imposed a significantly lesser reduction.

Despite this clear directive from his Department Chair, Dr. Chen still did not produce the needed funding, or <u>any</u> additional extramural funding, during the following fiscal year. Therefore, on May 14, 2017, Dr. Rosengart and Plaintiff met again to establish a plan for the upcoming year (FY 2018). They again discussed Plaintiff's failure to secure extramural funding sufficient to support 50% of his personal salary and agreed that his salary would be reduced again, to the NIH cap of $187,000 starting in fiscal year 2018.[10] This meeting was memorialized in a letter, which Plaintiff signed.[11] Dr. Rosengart also advised Plaintiff that BCM was opening a nationwide search for a new Division of Surgical Research Chief, and he encouraged Plaintiff to participate as an

---

8 *See generally* Exs. F-L.
9 *See generally* Ex. F.
10 Ex. A at 104:7-19, 112:13-19; 116:23-117:1; 117:19-118:2.
11 Ex. G.

internal candidate. Plaintiff did not apply for the new role,[12] nor did he secure sufficient extramural funding in the following year, as required under the Policy.

Plaintiff's failure to meet his funding goals again was discussed in the next year's annual meeting between Dr. Rosengart and Plaintiff on June 26, 2018. At this meeting, Dr. Rosengart informed Plaintiff that the Division of Surgical Research was going to be dissolved, "in part, because of the lagging growth of extramural funding in the DSR over the past five years[.]"[13] Dr. Rosengart further advised Plaintiff that because of Plaintiff's own failure to secure extramural funding, "as has been documented in [his] annual reviews dating back to at least 2014," his appointment to the endowed chair position was being rescinded.[14] However, Dr. Rosengart noted that despite those ongoing concerns, Plaintiff's contributions in the areas of research administration made him suited for the role of Director, Michael E. DeBakey Department of Surgery Basic Science and Translational Labs, a role for which Dr. Rosengart recommended a salary of $150,000 annually. These terms were memorialized to Dr. Chen in a letter dated July 12, 2018.[15] It is undisputed that Plaintiff's salary was not reduced again after 2018.[16]

After learning that his endowed Chair would be rescinded, Plaintiff asked Dr. Rosengart to reconsider this decision. Dr. Rosengart agreed to do so if Dr. Chen committed to obtain the required external funding.[17] This decision was also memorialized in a letter,[18] which Plaintiff received on August 15, 2018, and which he signed in acknowledgment on August 30, 2018.[19]

---

12 Ex. A at 110:11-21.
13 Ex. I at 1.
14 *Id.*
15 *Id.* at 2.
16 Ex. A at 102:15-22; *id.* at 103:3-6 (Q: "Since your salary was reduced to $150,000 a year [in 2018], it has not been reduced further. Correct?" A. "Correct."); *see also* Ex. L at 1.
17 Ex. J.
18 *See generally* Ex. K.
19 *Id.* at 2.

Despite committing to meet the requirements of the funding policy, Plaintiff still did not do so. As a result, Dr. Rosengart met with Plaintiff again on or around September 9, 2020,[20] at which time he notified Plaintiff that, following review (and as discussed in their 2018 meetings), he was rescinding Plaintiff's appointments as Molecular Surgery Endowed Chair and Director of the Michael E. DeBakey Department of Surgery Basic Science and Translational Lab, effective immediately. During the meeting, Dr. Rosengart acknowledged that Plaintiff had secured some extramural funding, but the amount—approximately $30,000—was still well below the required threshold of 50% of his salary. Plaintiff's salary was $150,000, so 50% funding required at least $75,000. Nevertheless, out of appreciation for Plaintiff's efforts to secure some amount of external funding (his "first such funding since FY 2014"[21]), Dr. Rosengart informed Plaintiff that further salary reductions would be deferred for at least one year, which Dr. Rosengart hoped would provide Plaintiff sufficient time (and incentive) to meet the Department's funding requirements.[22] Plaintiff and Dr. Rosengart met again on October 14, 2020, where Dr. Rosengart reiterated the decisions to rescind Plaintiff's directorship and his endowed chair and to retain his salary at the $150,000 level at which it had been set since 2018.[23] Dr. Rosengart also advised Plaintiff during this conversation that due to his lack of extramural funding, Plaintiff's allocated research space would be reduced by 50%,[24] which was commensurate with the amount of extramural funding Dr. Chen had secured to date. The foregoing was memorialized in a letter dated October 14, 2020.[25]

---

20 Ex. A at 163:1-10.

21 Ex. L.

22 Ex. L at 1(Dr. Rosengart advised Dr. Chen he was "hopeful that this deferral will allow you the time to achieve the extramural funding needed to support your salary" and encouraged him to "work closely with our research leadership and Office of Surgical Research in your efforts to submit successful funding applications and further strengthen your personal research program.").

23 Ex. A at 164:20-165:8.

24 This decision was communicated to Plaintiff in October 2020, *see* Ex. L, and was then implemented in late January 2021, Ex. A at 184:15-23.

25 *See generally* Ex. L.

### C. Plaintiff Files a Charge of Discrimination in October 2021.

Plaintiff did not sign the letter following the October 2020 meeting, instead complaining to Dr. Rosengart—for the first time—that he believed he was being discriminated against.[26] However, while Plaintiff complained of discrimination in the October 2020 meeting, he did not file any formal complaint against BCM at that time.[27] Instead, Dr. Chen waited almost a full year before filing a Charge of Discrimination with the Houston District office of the United States Equal Employment Opportunity Commission, on October 12, 2021,[28] **363** days after the October 14, 2020 meeting, and over nine years after the first allegedly discriminatory event discussed in Plaintiff's pleadings.[29]

## V. ARGUMENT AND AUTHORITIES

### A. Plaintiff Failed to Timely Exhaust His Administrative Remedies, Barring His Claims.

Plaintiff alleges that BCM discriminated against him based on his race and national origin and retaliated against him,[30] in violation of Section 21.001 *et seq.* of the Texas Labor Code ("Chapter 21").[31] BCM is entitled to summary judgment on all of Dr. Chen's claims because he unquestionably—and admittedly—failed to timely exhaust his administrative remedies. The

---

26 Ex. A at 200:21-201:19 (Q: "Other than your conversation that you recorded in … October of 2020 and other than your attorney's letter on October 29, 2020, have there been any other times that you've reported to anyone at BCM that you felt discriminated against?" A: "No. […]"; *see also id.* at 166:8-12). Plaintiff claims to have also made a complaint to BCM's ombudsman in 2018, *see* Ex. A at 201:12-202:7, but there is no evidence the ombudsman advised Dr. Rosengart or Dr. LeMaire of the complaint. Ex. A at 205:14-25.

27 Ex. N; *see also* Ex. A at 201:5-19; *id.* at 206:1-4. Plaintiff's attorney sent a letter to BCM on or around October 29, 2020. *See* Ex. M.

28 *See* Plaintiff's Orig. Pet. at ¶43 ("On October 12, 2021, Dr. Chen filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission."); *see also* Ex. N; Ex. A at 208:18-25; 209:24-210:3 (Plaintiff testified "No" when asked if he had filed a charge of discrimination with the Equal Employment Opportunity Commission or the Texas Workforce commission before May 19, 2021).

29 *Compare* Plaintiff's Orig. Pet. at ¶¶10-14 *and* Ex. A at 34:8-23 and *id.* at 40:1-23 (Plaintiff's testimony that his allegations in Paragraphs 12-14 stem from events in 2012).

30 *See* Plaintiff's Orig. Pet. at ¶¶23-25, 27-29.

31 Chapter 21 prohibits an employer from discharging or in any other way discriminating against an employee based on any protected class status of an employee, including race and national origin. *See* Tex. Lab. Code § 21.051; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

exhaustion of administrative remedies is a mandatory prerequisite to suing for unlawful employment practices under Chapter 21. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492–93 (Tex. 1996) (per curiam). *Ryan v. Wells Fargo, N.A.*, No. 3:21-CV-2627-D, 2022 WL 256503 (N.D. Tex. Jan. 27, 2022).

To properly exhaust administrative remedies under the Texas Labor Code, Plaintiff was required to (1) file a complaint with the Texas Workforce Commission ("TWC") or the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act; (2) allow the agency 180 days to dismiss or resolve the complaint; and (3) sue in the district court within 60 days of receiving a right to sue letter from the agency and no later than two years after filing the complaint. Tex. Lab. Code §§21.202, .208, .254, .256. The 180-day limitations period begins when the employee is informed of the allegedly discriminatory employment decision. *Specialty Retailers*, 933 S.W.2d at 493.

In this case, Plaintiff attributes a wide range of alleged misconduct to BCM, including reductions in his pay; changes to his title and/or the rescission of certain positions he held during his tenure with BCM; the reduction of his lab space; and several other allegedly unpleasant interactions with his supervisor, Dr. Rosengart. However, as Plaintiff's Petition and his unequivocal testimony make clear, <u>all of these allegations arise outside of Chapter 21's statute of limitations</u>. That is, Plaintiff admits in his pleading that his issues at Dr. Rosengart's interview and the first change in his job title occurred in 2012.[32] Regarding his claim that he was not allowed to speak at faculty meetings, he acknowledged in sworn testimony that the alleged incidents occurred between 2013 and 2016.[33] He admits, both in his testimony and his pleadings, that his

---

[32] Plaintiff's Orig. Pet at ¶¶12-14. Plaintiff also repeatedly testified in his deposition that these events occurred in 2012, 9 years before he filed a charge of discrimination. *See*, *e.g.*, Ex. A at 34:8-23; 39:10-12, 18-21; 40:1-11.

[33] *See* Plaintiff's Orig. Pet. at ¶15; Ex. A at 55:1-20.

pay has not been reduced since 2018,[34] and to the extent he no longer holds his endowed chair position or his directorship, both decisions were made and communicated to him in September 2020,[35] and carried out on October 14, 2020;[36] likewise, the decision to reduce his lab space was also communicated to him in October 2020 and carried out in early 2021.[37]

Both Plaintiff's pleadings and his sworn testimony demonstrate that he had knowledge of every allegedly discriminatory employment decision that forms the basis of this lawsuit at or near the time the decisions were made and carried out; thus, there is no basis for him to now argue that the deadline was somehow tolled. *See Specialty Retailers*, 933 S.W.2d at 493 ("The limitations period begins when the employee is informed of the allegedly discriminatory employment decision[.]") (citation omitted). It is undisputed, <u>and Plaintiff admits</u>, in both sworn testimony and in his pleadings, that he did not file a charge of discrimination until October 12, 2021.[38] Because none of these instances of alleged discrimination or retaliation happened on or after April 15, 2021—180 days before the date Plaintiff filed his charge—none of them are actionable here. *See* Tex. Lab. Code §21.202(a) ("[A] complaint under this subchapter <u>must</u> be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.") (emph. added).

To the extent Plaintiff argues that any of his claims may be salvaged by the continuing violation theory, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536

34 *See* Plaintiff's Orig. Pet. at ¶17.
35 Ex. A at 162:17-163:10.
36 Ex. L.
37 *See* Ex. L; Ex. A at 173:18-174:22; *id.* at 184:15-23.
38 Plaintiff's Orig. Pet. at ¶43 ("On October 21, 2021, Dr. Chen filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission."). This clear, deliberate, and unequivocal statement of fact is a judicial admission, conclusively established in Plaintiff's live pleadings, making the introduction of other pleadings or evidence on the topic unnecessary. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quotation omitted); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). Arguing further, if necessary, Plaintiff also testified he did not file a charge of discrimination until October 12, 2021. *See* Ex. A at 208:21-210:3.

U.S. 101, 113 (2002); *see also Heath v. Bd. Of Supervisors fo S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) ("[c]laims alleging discrete acts are not subject to the continuing violation doctrine."); *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 312 S.E.3d 800, 804 (Tex.App.—Houston [1st Dist.] 2009, no pet.) ("[t]he continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts."). Plaintiff's complaints of adverse employment actions exclusively relate to discrete actions.[39] *See*, *e.g.*, *City of Houston v. Smith*, No. 01-13-00241-CV, 2014 WL 768330, at *4 (Tex.App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.) (involuntary reassignment coupled with loss in title and pay is a discrete act to which the continuing violation does not apply); *San Benito Consol. ISD v. Leal*, No. 13-20-00569-CV, 2022 WL 243725, at *3 (Tex.App. Corpus Christi-Edinburg Jan. 27, 2022, no pet. h.) (mem. op.) ("A demotion is a discrete act that places an employee on notice that a cause of action has accrued.") (citation omitted); *See Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 88 (Tex.App.-Fort Worth 2003, no pet.) (annual reductions in pay were "isolated employment decisions," and "mere receipt of [a] paycheck does not constitute continuing act of discrimination) (quotation marks omitted, citing *Huckabay v. Moore*, 142 F.3d 233, 239 n.3 (5th Cir. 1998) *and Berry v. Bd. Of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983, *cert. denied*, 479 U.S. 868 (1986)).

Moreover, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Santi*, 312 S.W.3d at 805. Because none of the alleged acts fall within Chapter 21's 180-day period, any argument that the continuing violation doctrine applies here is baseless for that reason as well. *See*

---

39 *See*, *e.g.*, Plaintiff's Orig. Pet at ¶¶12-14; Ex. A at 34:8-23; 39:10-12, 18-21; 40:1-11; Plaintiff's Orig. Pet. at ¶15; Ex. A at 55:1-20; Plaintiff's Orig. Pet. at ¶17; Ex. A at 162:17-163:10; Ex. H; Ex. A at 173:18-174:22; *id.* at 184:15-23.

*Cooper-Day*, 121 S.W.3d at 86 ("The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." (emph. added, citing *Huckabay*, 142 F.3d at 238). Even assuming the above acts were not discrete, the continuing violation is still inapplicable as Plaintiff clearly was aware of them at or near the time they were made.[40] *See Cooper-Day*, 121 S.W.3d at 87-88 ("Cooper-Day knew of these allegedly discriminatory pay rate decisions more than 180 days before she filed her administrative complaint, and the continuing violation doctrine does not apply to her pay discrimination claim."); *Burrell v. Crown Cent. Petroleum, Inc.*, 255 F.Supp.2d 591, 621-22 (E.D.Tex. 2003). All of the alleged discriminatory and retaliatory actions occurred outside the limitations period. The evidence conclusively negates that Plaintiff timely exhausted his administrative remedies on his Texas Labor Code claims, which is a mandatory and essential element of these causes of action. The evidence establishes that Plaintiff's claims are all time-barred and therefor should be dismissed as a matter of law.

**B. BCM's Rationale Was Legitimate, Non-Discriminatory, and Non-Retaliatory and Plaintiff Cannot Prove Pretext**

Even if Plaintiff could establish that he filed his charge within the mandatory 180-day period established by Chapter 21—and he cannot—and assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination or retaliation—which Defendant does not concede—BCM is still entitled to summary judgment because it can readily articulate a legitimate, non-discriminatory, nonretaliatory reason for its actions: namely, Dr. Chen's repeated failure to meet his obligations to secure outside funding, per BCM Policy, and Dr. Chen cannot establish BCM's reasoning is pretextual as a matter of law.

---

40 *See generally* Exs. F-L.

An employer can rebut a *prima facie* case of discrimination or retaliation by producing evidence of a legitimate, non-discriminatory reason for the disputed employment actions. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018). Such a showing defeats any presumption of a Chapter 21 violation, requiring a plaintiff to come forward to produce evidence that the employer's stated reason is both false and a pretext for discrimination. *Id.* The employer's burden of production is not difficult to meet: even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason for an adverse employment action. *Winters v. Chubb Son, Inc.*, 132 S.W.3d 568, 576 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991)).

There is no question that BCM enacted the Policy in 2013,[41] and Plaintiff acknowledges he received and understood it.[42] The Policy made explicit that Dr. Chen was required to secure outside funding to fund at least fifty percent of his salary, and further, that failure to meet the funding obligation could lead to adverse consequences, including but not limited to salary reduction (up to 50%), probation, and termination of employment.[43] There is substantial summary judgment evidence demonstrating that BCM believed that Plaintiff did not comply with the policy in <u>any</u> year after it was enacted, from fiscal year 2014 until 2020.[44]

Plaintiff concedes that BCM, and Dr. Rosengart specifically, believed that he was not meeting the funding requirements.[45] Plaintiff's only basis for disputing that belief is his own

---

41 Ex. D.

42 Ex. A at 89:18-23; *id.* at 90:16-91:25.

43 Ex. D at 2.

44 *See generally* Exs. F-J.

45 *See*, *e.g.*, Ex. A at 111:7-19; 119:20-25; Ex. B at 65:1-6; 65:20-23; 68:6-9 (Plaintiff failed "to meet the 50 percent [funding] threshold" set forth in the research funding policy, "only bringing in $24,000"); 72:17-73:1 (under Plaintiff's leadership, there was a "lack of growth in overall Division of Surgical Research, extramural funding in four years of service as chief," during which Plaintiff had not "acted [as] a model of faculty goal of extramural funding […]"); 75:12-15 (Defendant had "concerns regarding [Plaintiff's] extramural funding during [his] tenure, going back to 2014");

disagreement with what funds counted as "external" funding. Plaintiff believes that certain internal funding he received, such as from the endowed chair and bonuses he received for academic research, should count towards the external funding requirement.[46] Plaintiff admits that if this internal funding is not counted, then he did not meet the funding requirements of the Policy.[47] Plaintiff's disagreement with how Defendant conducts its business is not evidence of discrimination or retaliation. *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 555-56 (Tex.App.—Dallas 2006, no pet.) (Texas's prohibitions against discrimination and retaliation are "not intended to be vehicles for judicial second-guessing of employment decisions nor intended to transform courts into personnel managers. Absent a discriminatory motive, a disagreement between an employer and employee over assessment of job performance is not actionable.") (citations omitted).

An employer's business decision, such as the decision to change an employee's job title or adjust his compensation, absent a discriminatory motive, is generally not actionable under applicable anti-discrimination laws. *See Martin v. Kroger Co.*, 65 F.Supp.2d, 516, 552 (S.D.Tex. 1999) (collecting cases); *see also Winters*, 132 S.W.3d at 578. Even where an employer's belief that the employee's performance is inadequate turns out to be incorrect, that determination is still legitimate and non-discriminatory. *See Little*, 924 F.2d at 97 ("The court's role in employment discrimination cases is not to second guess every personnel decision.") (citing *Martin*, 65 F.Supp.2d at 553).

The evidence of BCM's legitimate reason eliminates the presumption of unlawful discrimination or retaliation created by any *prima facie* showing by Plaintiff and leaves Dr. Chen

---

46 Ex. A at 80:1-20; 81:22-82:13 (Plaintiff believes his internally funded endowed chair should be treated as outside funding, but admits that the endowment for the molecular surgery chair came from the department of surgery's money and <u>not</u> from an outside source); *see also* Ex. A at 146:11-16.

47 Ex. A at 99:2-20.

with the ultimate burden to prove BCM engaged in intentional discrimination and retaliation against him. *Tex. Dep't of Family & Protective Servs. v. Howard,* 429 S.W.3d 782, 786–87 (Tex. App.–Dallas 2014, pet. denied); *Pineda v. UPS,* 360 F.3d 483, 485 (5th Cir. 2004). To satisfy this burden, Plaintiff must show substantial evidence that BCM's proffered justification is mere pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Wallace v. The Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078, 122 S. Ct. 1961 (2002). In determining whether a reason is pretext, a court may not "engage in second-guessing of an employer's business decisions." *LeMaire v. Louisiana*, 480 F.3d 383, 391 (5th Cir. 2007).

Plaintiff cannot meet his ultimate burden of proving that BCM's reason for its actions were false or that the real reason was a pretext for discrimination or retaliation. First, Plaintiff concedes the Policy—which he admitted he helped to develop—applied equally to all nonclinical faculty in BCM's department of surgery.[48] To the extent he makes allegations of race and national origin discrimination, those are predicated exclusively on his beliefs that the actions taken against him were motivated by unlawfully discriminatory animus. However, it is well-settled that Plaintiff's subjective beliefs are not competent summary judgment evidence and do not meet his burden. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Hidalgo v. Surety Sav. Loan Ass'n*, 487 S.W.2d 702, 703 (Tex. 1972); *see also Gold v. Exxon Corp.*, 960 S.W.2d 378, 385 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (subjective belief of discrimination is insufficient to survive summary judgment). Similarly, Plaintiff's conclusory allegations based on speculation and hearsay that he believes other individuals within his respective protected categories were

[48] Ex. A at 153:19-154:5. Plaintiff also admitted the committee that approved the Policy included his wife, who is also Chinese. Ex. A at 15:21-17:2; 155:11-156:8; *see also* Ex. B at 75:22-76:1.

discriminated against do not meet his burden.[49] *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988).

Likewise, BCM's legitimate reasons for its actions towards Plaintiff—spelled out in detail in Defendant's written communications to Plaintiff —is as equally unconnected to any alleged protected activity by Plaintiff as it was to his race and national origin. Indeed, all of the employment actions about which Dr. Chen complains occurred before Dr. Chen (or his lawyers) even raised a complaint of discrimination in October 2020. Accordingly, Plaintiff has no evidence of pretext to support his discrimination or retaliation claims, and BCM is entitled to summary judgment under Texas Rules of Civil Procedure 166a(c).

## VI. CONCLUSION

For all of these reasons, Defendant Baylor College of Medicine respectfully requests that the Court grant its Motion for Summary Judgment, that Plaintiff take nothing, and that Defendant be awarded such other and further relief to which it is justly entitled.

Dated: October 7, 2024

By: */s/ Katherine E. Flanagan*

Katherine E. Flanagan
State Bar No. 00788945
Nathan Prihoda
State Bar No. 24068070
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400
713.951.9212 (Fax)
kflanagan@littler.com

**ATTORNEYS FOR DEFENDANT**
**BAYLOR COLLEGE OF MEDICINE**

[49] While Plaintiff contends that two other faculty members within his protected classes were also subject to salary reductions under the Policy, he admits that they explicitly told him they also did not meet the extramural funding requirement. Ex. A at 156:19-157:14.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2024, I served a true and correct copy of the foregoing document via the Court's electronic filing manager pursuant to the Texas Rules of Civil Procedure upon the following counsel of record:

Melissa Moore
Curt Hesse
MOORE & ASSOCIATES
440 Louisiana Street, Suite 110
Houston, Texas 77002
melissa@mooreandassociates.net
curt@mooreandassociates.net

ATTORNEYS FOR PLAINTIFF

*__/s/ Katherine E. Flanagan__*
Katherine E. Flanagan

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Marlo Guillory on behalf of Katherine Flanagan
Bar No. 00788945
MGuillory@littler.com
Envelope ID: 92888654
Filing Code Description: Motion (No Fee)
Filing Description: Defendant's Motion for Summary Judgment
Status as of 10/8/2024 8:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Melissa AnnMoore | | melissa@mooreandassociates.net | 10/7/2024 4:38:07 PM | SENT |
| Curt ChristopherHesse | | curt@mooreandassociates.net | 10/7/2024 4:38:07 PM | SENT |
| Katherine E.Flanagan | | kflanagan@littler.com | 10/7/2024 4:38:07 PM | SENT |
| Nathan Prihoda | | nprihoda@littler.com | 10/7/2024 4:38:07 PM | SENT |
| Marlo Guillory | | mguillory@littler.com | 10/7/2024 4:38:07 PM | SENT |
| Jasmine Qualls | | jasmine@mooreandassociates.net | 10/7/2024 4:38:07 PM | SENT |